E-FILED
Friday, 09 February, 2007  09:32:47 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

KENNETH SIMMONS                          )
                                         )
                   Plaintiff,            )
                                         )
        v.                               )          Case No. 06-1155
                                         )
MED-I-CLAIMS et al.,                     )
                                         )
                   Defendants.           )

## ORDER

Now before the Court is Defendant Med-I-Claims Services' ("MICS") Motion for

Summary Judgment [#19].  For the reasons set forth below, the Motion is GRANTED IN PART

and DENIED IN PART.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims

asserted in the Complaint present federal questions under the Fair Debt Collection Practices Act

("FDCPA" or "the Act"), 15 U.S.C. 1601 *et seq*.

## FACTUAL BACKGROUND

The factual background of this case is neither lengthy nor complicated.  Pro se Plaintiff

Kenneth Simmons ("Simmons") is a resident of Mackinaw, Illinois, located in Tazewell County.

For reasons not relevant to this action, Simmons was arrested by the Tazewell County Sheriff on

June 16, 2004.  As Simmons was being restrained by one of the arresting officers, he requested

medical assistance.  The Sheriff's office contacted Mackinaw Rescue Squad, which transported

Simmons to Pekin Memorial Hospital by ambulance.  Mackinaw Rescue Squad's services for transportation, supplies, oxygen, and mileage cost a total of $465.00.

Defendant MICS provides Mackinaw Rescue Squad with services that include printing and mailing invoices to patients, and forwarding payments to the provider.  On November 17, 2004, MICS sent an itemized invoice to Simmons, listing $465.00 as the total due.  In the upper left hand corner of the statement is Mackinaw Rescue Squad's name, address, and phone number.  Printed immediately below Mackinaw Rescue Squad's information is "Billing Provided by: Med-I-Claims Services, Inc."  Below the itemization of charges, the statement instructs: "Make Checks Payable To: Mackinaw Rescue Squad," and "If you have any questions about your bill, please contact Med-I-Claims Services, Inc., at 309-682-5289.  All accounts due within 30 days."

When Simmons failed to respond to the 11/17/04 invoice, MICS sent him a second invoice on December 27, 2004.  Simmons also did not pay this invoice, so MICS closed Simmons' account.  In January 2005, Mackinaw Rescue Squad referred Simmons' account to Midwest Collections, apparently a collection agency retained by Mackinaw Rescue Squad.  According to MICS, Simmons informed Midwest Collections that Tazewell County was responsible for the charges because he was in the County's custody at the time he needed medical attention.  Midwest Collections then closed its account, and Mackinaw Rescue Squad referred the account back to MICS, in order to bill Tazewell County.

MICS contacted the Tazewell County Sheriff's Office, which informed MICS that Simmons had himself requested medical attention and was himself responsible for the charges.  The Sheriff's office also provided MICS with documentation regarding the arrest.  Upon receipt of this information, MICS sent Simmons an invoice on February 27, 2006.  The 2/27/06 invoice,

the central subject of this litigation, is apparently a duplicate of the original 11/17/04 invoice. The invoice date provided on the February 2006 statement is November 17, 2004. However, this February 2006 invoice contains a hand-written notation on the bottom: "We spoke to Tazewell County regarding this incident. They have documentation stating that you requested medication attention. Please call our office to set up a payment plan. This is your responsibility." The envelope in which the invoice was resent on 2/27/06 was marked only with Simmons' mail address for delivery, MICS' name and return address, a postage stamp, and the usual marks placed on the envelope by the United States Postal Service.

Simmons filed this action against MICS and "Employee/Employees Unidentified" on June 16, 2006. Simmons ten-count Amended Complaint alleges that MCIS and "Employee/Employees Unidentified" each violated §§1692e, 1692f, 1692g(a)(3), 1692g(a)(4), and 1692(g)(a)(5) of the FDCPA. Relatively early in the litigation, even before the Court held a Rule 16 conference, Defendant MICS has moved for Summary Judgment. The Summary Judgment record consists of an affidavit submitted by the owner and operation of MICS, copies of police reports describing the details of Simmons' arrest, and copies of the 11/17/04 invoice, the 2/27/06 invoice, and the envelope in which the 2/27/06 invoice was mailed. Simmons filed his Response, "Objections to Defendant's Motion for Summary Judgment," and MICS has filed a Reply. Simmons has also attempted to file another Response to MCIS' Reply, which is generally not permitted under the rules governing summary judgment pleadings without the Court's permission. *See* Local Rule 7.1.(D). However, the Court has reviewed Simmons' additional Response, and it presents no arguments beyond those raised in Simmons' first Response, and therefore has no effect on the Court's consideration of the pleadings. The matter is more than fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co*., 47 F.3d 928, 931 (7th Cir. 1995).

**DISCUSSION**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practice are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  While creditors generally are not subject to the FDCPA, the Act subjects third-party debt collectors to limitations on the content and nature of their written correspondence and other communications with debtors.  For example, the FDCPA prohibits "debt collectors" from employing abusive debt collection practices, such as late-night phone calls, embarrassing communications through third parties, harassment, and false and misleading representations.  *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir. 1994).  "Obviously, Congress did not intend to eliminate all debt collection practices, only those which it considered unfair."  *Id*.

MICS has moved for full or partial summary judgment on four separate grounds.  As a threshold matter, MICS argues that it is entitled to summary judgment on all counts because it is not a "debt collector," and therefore its activities do not violate the sections of the Act under which Simmons has brought his Complaint.  In the alternative, MICS argues that the law does not support the claims against Defendant employee/employees (Counts 2, 4, 6, 8, and 10), that there is no factual dispute that the claims under 15 U.S.C. § 1692f(8) must fail (Counts 3 and 4), and that there is no factual dispute that the claims under 15 U.S.C. § 1692g(a)(5) must also fail (Counts 9 and 10).  The Court will separately address each of the four arguments.

**I.  Debt Collector**

As mentioned above, the FDCPA regulates the conduct of any "debt collector."  The Act defines "debt collector" as "any person who uses any instrumentality of interstate commerce or

5

the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due to another. . . ."  § 1692a(6).  The Act, however, also provides a number of exceptions to this definition.  The relevant exception in this case excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt *which was not in default* at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F) (emphasis added).

In its Motion for Summary Judgment, MICS has presented two separate arguments why the Court should conclude that it is not a "debt collector" under the Act.  First, MICS argues that it was not attempting to collect any debt; rather, it was the creditor (Mackinaw Rescue Squad) that was attempting to collect a debt, and MICS is merely a printing and mailing service.  Second, MICS argues that Simmons' debt was not in default when it sent the 2/27/2006 invoice to Simmons.

### A. Whether MICS was "attempting to collect a debt"

MICS argues that it is merely a printing and mailing service and not a "debt collector." In general, a defendant's *actual* activities, rather than its stated business classification, is dispositive on whether the defendant qualifies as a debt collector under the FDCPA.  *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir. 1994).  Therefore, the Court's inquiry will focus on actual practices of MICS.

Other courts confronting similar arguments have looked to a variety of factors to determine when a defendant acts as a provider of ministerial printing and mailing services rather than as a debt collector.  MICS cites one of these cases, *Trull v. Lason Systems, Inc*., 982 F. Supp. 600, 607 (N.D. Ill. 2007), and likens the facts of the instant case to the facts in *Trull*.  In

that case, the court explained that defendant Lason was "an integrated outsourcing services provider that helps companies manage records, control documents, and disseminate business communications." *Id*. at 602.  Lason was retained by a collection agency (not the actual creditor) and agreed to accept the collection agency's electronic transmissions, produce laser printed collection letters, and send the letters in a "Priority Gram" format, so that the debtors were less likely to throw the letters out.  *Id*.  Lason denied that it wrote, conceived, edited or approved the content of the communications.  *Id*.

The Court held that Lason was not sufficiently involved in the collections process to be a debt collector under the FDCPA, even though advertisements that Lason mailed to debt collection agencies and other businesses invited those businesses to join in a "strategic partnership" with it.  The Court noted that while Lason's name appeared in the upper right-hand corner of the collection letter, it did not write or edit the debt collection agency's letters, did not consult with the collection agency regarding the collection process, was not identified in the letter as the party seeking to collect a debt or a party to whom the debtor could respond, and was paid a flat rate by the collection agency without regard to the collection letter's success.  *Id*. at 607-08.

The court also rejected the plaintiff's reliance on an informal staff letter from the Federal Trade Commission (the federal agency charged with FDCPA enforcement), which opined that certain activities of a fictional mailing service qualified as a debt collection.  *Id.*  The court recognized, "[t]he mailing service discussed in the FTC letter bears similarities to Lason in that it did not furnish the contents of its creditor-customers' collector letters, did not receive payments from debtors, and did not provide contact information in the letters."  *Id*. at 607.  The court continued:

The mailing service, however, incorporated a key distinction: it provided a phone service whereby it directly contacted debtors and left a recording, which the mailing service had developed 'in consultation with' the creditor, indicating that the debtor had an outstanding obligation and explaining how to pay it.  It is easy to see why this activity constitutes debt collection – it falls under the statutes literal terms.  By contacting debtors on its own via telephone – with a message whose content it helped define – and informing debtors about obligations owed, the mailing service was literally attempting to collect a debt.  This situation is distinguishable from Lason's; at no time did Lason follow up on Arrow's collection efforts by calling or otherwise contacting debtors, nor did Lason have a hand in crafting [the collection agency's] communications with debtors.

*Id*. at 607-08.

In a similar case issued days before *Trull*, another judge in the Northern District of Illinois also held that Lason was merely a printing and mailing service, considering significant the facts that debtors are never instructed to contact Lason, that Lason does not include its return address or phone number on the collection letters it prints, that Lason does not provide follow-up contact services, that its fees are not contingent on the success of its debt collector-customers' efforts, and that its promotional brochures "are nothing more than advertisement techniques designed to solicit business*." Laubach v. Arrow Service Bureau, Inc*., 987 F. Supp. 625, 631 (N.D. Ill. 1997).  "Very significantly, . . . Lason has no relationship with the debtors' creditors." *Id*.

A couple of years later in *Randle v. GC Services L.P*., 48 F. Supp. 2d 835 (N.D. Ill. 1999), the court applied *Laubach* to a factually similar set of circumstances.  In *Randle*, the collection letter included both the defendant's and the creditor's name and address, but did not include a phone number for either.  48 F. Supp. 2d at 839 n.6.  The Court found that the defendant's involvement in the collection process resembled "the involvement of a mailing service, rather than that of a debt collector."  *Id*. at 840.  The defendant did not collect money from debtors, the debtors were never directed to contact the defendant, the defendant did not

provide follow-up collection services, and charged the creditor a flat fee rather than charging according to the amount of money the creditor actually recovers. *Id.*; *see also Peters v. AT & T Corp.*, 43 F. Supp. 2d 926 (N.D. Ill. 1999) (denying summary judgment on issue of whether a "mailing service" defendant was a debt collector because of several factual disputes, including whether the defendant was authorized to handle questions from debtors); *Arellano v. Etan Industries*, 1998 WL 911729 (N.D. Ill. 1998) (denying summary judgment where there was evidence that all the defendant did was mail letters but also evidence that the defendant was authorized to work out payment plans with debtors and to recommend that certain debtors be referred to credit bureaus and/or attorneys).

MICS argues that the Court should conclude that, under *Trull*, it was not attempting to collect a debt because the 2/27/06 statement clearly identifies Mackinaw Rescue Squad as the sender (and includes MRS's address, phone number, and fax number) and requests that checks be made out to Mackinaw Rescue Squad. Moreover, MICS argues that its name (but not its address) was included only in the upper left-hand corner of the invoice, under the text, "Billing provided by," and that the "only difference between the invoice and the letter in *Trull* is the addition of MICS's telephone number." Def.'s Mtn., at 4.

Most of Simmons' response to MICS' motion amounts to a mere denial of MICS' factual statements, without any supporting exhibits or affidavits. Simmons argues that MICS meets the statutory definition of debt collector because MICS is the party who physically placed the statement in the mail. Simmons also argues that "[MICS] has admitted that [it] wanted Simmons to send payment to [MICS]." It is not clear from Simmons' pleading in what context MICS has made this alleged admission, though Simmons may be referring to the first paragraph of MICS' statement of undisputed facts wherein MICS states that it provides Mackinaw Rescue Squad with

several services, including "forwarding payments to the provider."  Simmons cites no case law to support his position that MICS is a debt collector, instead arguing that "[t]he case law Defendant provided is irrelevant to this claim and contrary to case law and the statue [sic]."  Pl.'s Resp., at 2.

Here, Simmons has not presented a substantial legal counter-argument to MICS' Motion on the "attempting to collect a debt" issue.  Nevertheless, before the Court can grant Summary Judgment in MICS' favor, the Court must be satisfied that there are no disputes of material fact and that MICS is entitled to judgment as a matter of law.  The record before the Court at this time is limited, and there are internal contradictions within even that limited record.

The two pertinent pieces of evidence that MICS relies on for this argument – the affidavit of Marcey Flores, the owner and operator of MICS, and a copy of the 2/27/06 statement – establish that MICS is paid a flat fee for its services, that Mackinaw Rescue Squad's name and address are prominent on the statement, that the invoice indicated that checks should be made out to Mackinaw Rescue Squad, and that Mackinaw Rescue Squad uses a collection agency, Midwest Collection, to collect debts from patients who fail to pay their invoices.  Under the cases summarized above, all of these facts suggest that MICS is not a debt collector.

However, the evidence also establishes that unlike the letters in *Trull* and *Laubach*, the 2/27/06 statement contained MICS' contact information.  Unlike *Randle*, the statement explicitly instructs debtors to contact MICS with questions.  Unlike all of the cases above, where the defendant printing and mailing services apparently had no input into the content of the letters that were mailed out on the creditors' behalf, it is unclear what level of control MICS had over the content of 2/27/06 statement, whether it had "a hand in crafting" the communication.  *Trull*, 982 F. Supp. at 608.  The hand-written memo on the bottom of the correspondence at issue is

10

especially problematic.  It may be that Mackinaw Rescue Squad instructed MICS to make the

hand-written notation: "We spoke to Tazewell County regarding this incident. They have

documentation stating that you requested medical attention.  Please call our office to set up a

payment plan.  This is your responsibility."  However, based on the limited evidence currently

before the Court, it appears just as likely that MICS made this notation on its own, without

Mackinaw Rescue Squad's involvement.  This written statement possibly likens MICS to the

fictional debt collector described in the FTC letter discussed in *Trull*, rather than a mere printing

or mailing service.  Moreover, the statement itself provides at least some evidence that MICS

had authority to negotiate payment plans on the creditor's behalf.  Contrary to MICS' assertion,

this evidence could lead a reasonable juror to conclude that MICS was "'driving the collection

attempt.'"  Def.'s Mtn., at 5 (quoting *Trull*, 982 F. Supp. at 608).  Because the limited evidence

is not undisputed and the factual record is thin, summary judgment in the issue of whether MICS

was attempting to collect a debt is not appropriate.

### B. Whether Simmons' debt was in default

MICS also argues that it is not a "debt collector" under the FDCPA because it does not

service debts that are in default.  As stated above, § 1692a(6)(F)(iii) of the Act excludes from the

definition of debt collector one who is attempting to collect a debt that is not in "default."

Therefore, the classification as debt collector also depends upon the status of a debt, rather than

the just the type of collection activities used.  Unfortunately, the FDCPA does not define so key

a term as "default."  *Alibrandi v. Financial Outsourcing Services, Inc*., 333 F.3d 82, 86 (2d Cir.

2003).

In certain situations, federal regulations provide the point in time in which default

commences.  *See, e.g*., 7 C.F.R. § 762.141(a) (30 days for farm loans); 12 C.F.R. § 336.3(c) (90

11

days for loans by federal insured depository institutions to Federal Deposit Insurance

Corporation; 34 C.F.R. § 685.102(b) (270 days for certain student loans).  The Court recognizes

that in many contractual debtor-creditor relationships, a provision of the written agreement will

dictate when the debt is considered in default, rather than simply outstanding.  However, in

situations like the instant case, where there is no relevant contractual provision (let alone a

contractual relationship) between the debtor and the creditor nor any governing regulation, courts

have struggled to establish when a debt is in default for purposes of the determining whether a

party is a debt collector under the FDCPA.  *See Alibrandi*, 333 F.3d 86-88.

In *Alibrandi*, the creditor had referred the plaintiff's account to a collection agency that

was an undisputed debt collector.  *Id*. at 83.  Before the plaintiff had made any payments to the

collection agency, the creditor shifted the collection responsibility to the defendant, who claimed

that it was a "'debt service provider' whose job it was to remind account holders to pay debts

that were outstanding *but not in default*."  *Id*. (emphasis added).  The defendant argued that it

was not a "debt collector" under the FDCPA, in part, because it had agreed in its contractor with

the creditor that it was not one and would not service debts that were in default.  *Id*. at 84.  The

correspondence the plaintiff received from the defendant even explicitly stated "Your account is

not in default."  *Id*.

Still, the plaintiff presented two alternative theories why the defendant was a debt

collector: (1) his debt was in default immediately after it became due; and (2) prior to the

defendant's letter, the creditor had already declared the plaintiff's debt to be in default by virtue

of the original collection agency's self-identification as a "debt collector."  *Id*. at 85.  After

explaining that neither the Act, nor any contract, nor any relevant regulation dictated the "default

point" in this case, the Second Circuit rejected the plaintiff's argument that default occurred

12

immediately after the debt was due.  *Id*. at 87 ("Given the persistent ambiguity of the term 'default,' we look to the underlying purpose of the statute. . . . We conclude that the FDCPA's broad, pro-debtor objectives would not be served if we adopted [the plaintiff's] argument that default occurs immediately after payment becomes due.).

While the court found that default did not occur immediately, "not until well after a debt becomes outstanding," the court did adopt the plaintiff's second theory.  The creditor had previously referred the plaintiff's account to a collection agency, which was undisputedly a debt collector under the FDCPA.  *Id*. at 88.   Because an entity cannot be a debt collector unless the debt it attempts to collect is in default, the collection agency's self-identification as a debt collector constituted a declaration by the creditor that the plaintiff's debt was in default.  *Id*.  Any agreement between the creditor and the defendant that it would only service debts that were not in default could not change the status of the account, and it was irrelevant if the defendant sincerely believed that it was servicing a debt that was not in default.  *Id*.

Here, the Court need not decide the exact point when Simmons' would have been in default, and contrary to MICS' assertion,  there is insufficient evidence to conclude that Simmons' debt was not in default when MICS sent the 2/27/06 statement.  While the affiant, (the president of MCIS) states that the bill was not in default, the default status would have to be assigned by actual creditor, and not by the party that purportedly only prints and mails invoices. There has been no evidence submitted regarding the status assigned to the account by Mackinaw Rescue Squad.  In fact, the affiant's statement that Mackinaw Rescue Squad had previously referred Simmons' account to Midwest Collections possibly cuts against MCIS' assertion that the account was not in default, depending on the content and nature of the communication

between Midwest Collections and Simmons.[1]  *See id.*  (creditor could not "undo" default status if

collection agency contacting debtor had already identified itself as a debt collector).  Because

there is insufficient evidence regarding at what point the creditor, Mackinaw Rescue Squad,

considered the account to be in default, summary judgment on this point is not appropriate.

### C. Conclusion

MICS' Motion for summary judgment is denied with respect to its argument that it is not

a debt collector under the FDCPA.  While the Court is in no way concluding that MICS *is* a debt

collector, the record is insufficiently developed at this point for the Court to find, as a matter of

law, that MICS *is not* a debt collector.

### II.   Individual Liability

Simmons' ten-count complaint alleges five statutory violations by "Defendant, Med-I-

Claims Services, Inc," and the same five statutory violations by "Defendant

employee/employees."  MICS argues that, even if it were a debt collector, it is entitled to

Summary Judgment on the counts against "Defendant employee/employees" (Counts 2, 4, 6, 8

and 10) because the facts do not support individual liability under the FDCPA.  Simmons again

presents no significant legal counter-argument, stating only "AGAIN, the law is clear, any

person that collects or attempt [sic] to collect a debt directly or indirectly [sic]."  Pl.'s Resp., at 2.

The Seventh Circuit has made clear that individuals do not become "debt collectors"

simply by working for debt collection companies.  *Pettit v. Retrieval Masters Credit Bureau,

Inc.*, 211 F.3d 1057, 1059 (7th Cir. 200).  "Just as in the Title VII context, the debt collection

company answers for its employees' violations of the statute. . . . Individuals who do not

otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act"

---

[1]  Further, the invoice mailed to Simmons on 2/27/06 was dated 11/24/04, as it was apparently a copy of the original invoice sent on that date.  The invoice advised "All accounts due within 30 days."  This also may suggest that Mackinaw Rescue Squad possibly considered Simmons' to be in default.

and suits against them are generally regarded as frivolous.  *Id*.  The FDCPA simply does not contemplate personal liability for employees, "except perhaps in limited instances where the corporate veil is pierced."  *Id*.

Here, even if the Court interprets the evidence in the light most favorable to Simmons, he has still failed to present any evidence or even any unsupported allegations to suggest that piercing the corporate veil would be appropriate in this case.  Because the facts of the case do warrant individual liability for any MICS employees, MICS' Motion for Summary Judgment is granted with respect to Counts 2, 4, 6, 8 and 10.

### III.  15 U.S.C. § 1692f(8)

MICS also argues that it is entitled to Summary Judgment on Counts 3 and 4 of the Complaint, which are based on 15 U.S.C. § 1692f(8).  Section 1692f(8) prohibits debt collectors from using language other than the debt collector's address on an envelope, "except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."  Defendant MICS has submitted the best evidence possible to support its Motion on these counts – a photocopy of the envelope in which the 2/27/06 statement was sent. The envelope bears only Simmons' name and address, a stamp and the postage markings affixed by the postal service, and MICS' name and address.

Simmons does not dispute that the exhibit is a copy of the actual envelope that he received.  Instead, he argues that MICS has violated § 1692f(8)'s mandate that such an envelope bear only the debt collector's address "except that a debt collector may use his business name," because the return address provides that it is from "Med-I-Claims" and Defendant's business name is actually "Med-I-Claims Services Inc."  MICS in no way deceptively altered its name on the envelope nor does the name indicate that MICS is in the debt collection business.  The Court

considers this argument to be frivolous, and MICS' Motion for Summary Judgment is granted with respect to Counts 3 and 4.

### IV.  15 U.S.C. § 1692g(a)(5)

MICS' final argument is that it is entitled to Summary Judgment on Counts 9 and 10, which allege violations of 15 U.S.C. § 1692g(a)(5).  Section 1692g(a)(5) requires a debt collector to provide in writing

> a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor

MICS correctly states that all of the invoices it sent to Simmons clearly identify Mackinaw Rescue Squad as the creditor, and argues that "the plaintiff has made no suggestion that Mackinaw Rescue Squad is not the original creditor, or that a current creditor existed that was different from Mackinaw Rescue Squad, rendering the application of this provision moot."  Simmons makes no response to this argument.  The Court agrees that this section is not applicable to the relevant undisputed facts, and therefore, MICS' Motion for Summary Judgment is granted with respect to Counts 9 and 10.

### CONCLUSION

For the above reasons, MICS' Motion for Summary Judgment [#19] is GRANTED IN PART and DENIED IN PART.  The Motion is granted with respect to Counts 2, 3, 4, 6, 8, 9 and 10 and denied with respect to all remaining Counts.

ENTERED this 8th day of February, 2007.

_s/Michael M. Mihm___
   Michael M. Mihm
   United States District Judge